IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **APRIL TAYLOR, on behalf of herself and all other affected persons,**<br><br>Plaintiff,<br><br>v.<br><br>**BARRETT FIREARMS MANUFACTURING, INC.,**<br><br>Defendant. | Case No. _____<br><br>**JURY DEMAND**<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff April Taylor ("Ms. Taylor"), on behalf of herself and all affected persons, brings this Class Action Complaint ("Complaint") under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-301, against her former employer, Barrett Firearms Manufacturing, Inc. ("Barrett Firearms"), for gender discrimination. Barrett Firearms has failed to recruit women for salesperson roles, has failed to consider hiring women who applied to work as salespeople, and has deterred women applicants from applying to work as salespeople with its well-known policy of refusing to hire women as salespeople. Ms. Taylor also brings this action against Barrett Firearms for retaliating against her for complaining about gender discrimination, pregnancy discrimination, and unequal pay in violation of the Equal Pay Act of 1963 ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the THRA. In support of her Complaint, Plaintiff states as follows:

### INTRODUCTION

1. Ms. Taylor files this class action to remedy violations of the THRA. This action seeks to recover all damages due to Ms. Taylor and all other class members for gender

discrimination. The proposed class consists of women whose applications to work for Barrett Firearms as salespeople were rejected at any time since May 9, 2021, and women who were deterred from applying to work as salespeople for Barrett Firearms since May 9, 2021, by its well-known policy of refusing to hire women as salespeople.

2. Ms. Taylor also brings this action to remedy the unlawful retaliation she suffered while working for Barrett Firearms.

3. Ms. Taylor engaged in a variety of activities protected by the EPA, Title VII, and the THRA, including but not limited to: complaining internally about gender discrimination and pregnancy discrimination for disparate treatment related to bonus payments; filing a charge of discrimination in July 2021 with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging gender and pregnancy discrimination; negotiating a release of her gender- and pregnancy-discrimination claims in exchange for a payment from Barrett Firearms in July 2021; complaining internally about unequal pay for men and women at Barrett Firearms between approximately August 2021 and December 2021; attempting to apply for an open salesperson role; and complaining about Barrett Firearms' policy of not hiring women as salespeople (collectively, "Protected Activities").

4. After Ms. Taylor engaged in her Protected Activities, Barrett Firearms retaliated against her for those Protected Activities in multiple ways, including but not limited to ostracizing Ms. Taylor at work; reassigning her job duties to other Barrett Firearms employees; terminating Ms. Taylor's employment for a pretextual reason in approximately February 2022; and accusing Ms. Taylor of theft from Barrett Firearms.

2

Case 3:22-cv-00336   Document 1   Filed 05/10/22   Page 2 of 17 PageID #: 2

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction. Ms. Taylor's claims either arise under federal statutes, 28 U.S.C. § 1331, or are "so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution," *id.* § 1367(a).

6. Barrett Firearms is subject to personal jurisdiction in this Court because it is headquartered in Christiana, Tennessee, a town in Rutherford County.

7. Ms. Taylor has satisfied all jurisdictional prerequisites to bringing her retaliation claims under Title VII. Specifically, Ms. Taylor timely filed a charge of discrimination with the EEOC regarding her retaliation claims.

8. EEOC issued Ms. Taylor a right-to-sue letter on February 17, 2022, less than 90 days prior to Ms. Taylor initiating this action.

9. Ms. Taylor reserves the right to amend this Complaint to assert her class claims for gender discrimination under Title VII. She timely filed a charge of discrimination with the EEOC regarding that claim. Once the EEOC issues a right-to-sue letter, Ms. Taylor will timely amend this Complaint to include her claims under Title VII.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to this action occurred within this District, and Barrett Firearms does business in this District.

## PARTIES

11. Ms. Taylor is an individual; she resides in Rutherford County, Tennessee.

12. Barrett Firearms is a Tennessee domestic corporation, licensed to do business in this State.

13. Barrett Firearms' registered agent for service of process in Tennessee is Ronnie G. Barrett, 5926 Miller Lane, Christiana, TN 37037.

14. At all relevant times, Ms. Taylor was an employee of Barrett Firearms under the EPA.

15. At all relevant times, Barrett Firearms was Ms. Taylor's employer under the EPA.

16. At all relevant times, Ms. Taylor was an employee of Barrett Firearms under Title VII.

17. At all relevant times, Barrett Firearms was Ms. Taylor's employer under Title VII.

18. At all relevant times, Ms. Taylor was an employee of Barrett Firearms under the THRA.

19. At all relevant times, Barrett was Ms. Taylor's employer under the THRA.

## FACTS

20. Ms. Taylor began working for Barrett Firearms in approximately March 2018.

21. Ms. Taylor's last role was Export/Import Specialist, and she began working in that position in approximately January 2019.

### Retaliation

22. During the spring of 2021, Ms. Taylor was pregnant and on maternity leave.

23. Because Ms. Taylor was on maternity leave, Barrett Firearms attempted to deny her the full bonus payment she was due.

24. Ms. Taylor complained internally at Barrett Firearms that the failure to pay her full bonus was gender and pregnancy discrimination, because men working at Barrett Firearms who had been on leave for reasons other than maternity had received their full bonuses in the past.

25. Barrett Firearms did nothing to remedy the discriminatory treatment, despite Ms. Taylor's internal complaints.

26. Ms. Taylor then filed a charge of discrimination with the EEOC in approximately July 2021, alleging gender and pregnancy discrimination.

27. Barrett Firearms offered Ms. Taylor a settlement payment if she would withdraw her EEOC charge and sign a release of all her claims prior to the effective date of the release.

28. Ms. Taylor accepted the settlement payment and withdrew her first EEOC charge in approximately July 2021.

29. After Ms. Taylor filed her EEOC charge, Barrett Firearms management employees began to treat Ms. Taylor differently.

30. Barrett Firearms management employees ostracized Ms. Taylor from internal social interactions because of her first EEOC charge.

31. Barrett management employees began reassigning Ms. Taylor's job duties to other employees, making Ms. Taylor feel as if she was being targeted for termination.

32. In August 2021, Ms. Taylor orally complained to a Barrett Firearms management employee, Denita Albert-Wade ("Albert-Wade"), about a lack of pay equity between men and women at Barrett Firearms, because Barrett Firearms hired a male employee at a $50,000 salary with bonuses and two weeks' paid time off for the holidays while Ms. Taylor made $24 per hour and did not receive the same paid days off as the male employee.

33. Over several conversations in August 2021, Barrett Firearms, through Albert-Wade, refused to correct the pay inequities that Ms. Taylor identified, instead proposing that Ms. Taylor develop a new job title on her own if she wanted to work in a salaried position.

34. Ms. Taylor submitted a written complaint about the lack of pay equity at Barrett Firearms on approximately December 21, 2021.

35. Barrett Firearms management employee Mitch Hulsey ("Hulsey") responded to Ms. Taylor's complaint on approximately January 11, 2022.

36. Hulsey refused to correct the lack of pay equity, claiming that the male employee's job title including working with multiple departments.

37. When Ms. Taylor pointed out that job titles alone do not determine wage differences under the EPA, Hulsey did not respond.

38. As an Export/Import Specialist at Barrett Firearms, Ms. Taylor's duties included preparing documents for shipments and shipping Barrett Firearms products both internationally and domestically.

39. Ms. Taylor had access to Barrett Firearms' FedEx shipping account as part of her job duties.

40. Barrett Firearms does not maintain any written policies about the use of the company FedEx account.

41. Ms. Taylor had previously heard two Barrett Firearms management employees, Comptroller Jim Flowers and Shipping Manager Shane Fitzgerald ("Fitzgerald"), discussing using the Barrett Firearms FedEx account to ship personal items and then repaying the company for the use of the account, thereby benefitting from the discount in shipping costs.

42. In approximately late January 2022, Ms. Taylor used the Barrett Firearms' FedEx account to send a personal package; the total cost was approximately $70.

43. Ms. Taylor had intended to pay for the package at FedEx using her own funds but was informed by the FedEx employee that to use the account (and receive the discount) she needed

to charge the shipping to the account, so she decided to charge it to the account and repay the company on Monday.

44. The Monday following Ms. Taylor's use of the company FedEx account, she contacted Fitzgerald to inform him that she used the FedEx account and asked him how she could repay Barrett Firearms for the cost.

45. Fitzgerald claimed that Ms. Taylor needed a manager's approval before sending the package using the company FedEx account.

46. No one from Barrett Firearms had ever informed Ms. Taylor of such a policy.

47. Ms. Taylor informed Fitzgerald that she was unaware of such a policy.

48. Either the same day or the next day, Ms. Taylor emailed another Barrett Firearms comptroller, Tina Dial ("Dial"), explaining that she had used the company FedEx account and needed to pay the company back.

49. Dial informed Ms. Taylor that she could pay cash to the company or have the money withheld from a paycheck.

50. Dial did not say anything about Ms. Taylor violating company policy when Dial informed Ms. Taylor of how she could repay the company.

51. On approximately February 2, 2022, Barrett Firearms management employees, including but not limited to Hulsey and Joel Miller ("Miller"), called Ms. Taylor into a meeting and terminated her employment.

52. Despite Ms. Taylor explaining that she understood it was permissible for Barrett Firearms employees to use the company FedEx account because of the prior conversation between two management employees about it and the lack of any written policies related to its use, Barrett Firearms insisted on terminating Ms. Taylor for violating a company policy.

7

53. At no point during the February 2 meeting or at any other time during Ms. Taylor's employment did anyone at Barrett Firearms accuse her of theft.

54. The alleged violation of company policy that Barrett Firearms cited to terminate Ms. Taylor's employment was a pretext for unlawful retaliation, because the stated reason for Barrett Firearms' action did not actually motivate Barrett Firearms and/or the stated reason was insufficient to justify a termination.

55. After Barrett Firearms terminated Ms. Taylor, she filed a second EEOC charge in February 2022.

56. The EEOC issued Ms. Taylor a right-to-sue letter on her second EEOC charge on approximately February 17, 2022.

57. Barrett Firearms further retaliated against Ms. Taylor by belatedly and falsely accusing her of theft during an unemployment appeal hearing in April 2022.

**Class Gender Discrimination**

58. Throughout Ms. Taylor's employment, she heard Barrett Firearms sales and management employees state that Barrett Firearms would never hire a woman as a salesperson.

59. The reason articulated for Barrett Firearms' policy is that Ronnie G. Barrett, the company's owner, does not believe that salesperson roles are appropriate for women.

60. In addition to not hiring women as salespeople, Barrett Firearms does not consider applications from women who apply for salesperson roles.

61. In addition to not hiring women as salespeople and refusing to consider applications from women who apply for salesperson roles, Barrett Firearms deters women applicants through its well-known policy of not hiring women as salespeople.

62. Ms. Taylor was and is qualified to work as a salesperson for Barrett Firearms.

63. In approximately October 2021, a male salesperson named Jordan Progar ("Progar") left Barrett Firearms.

64. Other employees began discussing in the fall of 2021 whether any of the women at Barrett Firearms might be hired to replace Progar.

65. Progar told Ms. Taylor and another woman who works for Barrett Firearms that the company hiring a woman as a salesperson "would never happen" because the owner "doesn't believe women are salesmen."

66. A Barrett Firearms sales manager named Cooper Thompson was present for the conversation and confirmed to Ms. Taylor that Progar was correct and that Barrett Firearms would never hire a woman as a salesperson.

67. Barrett Firearms decided to fill the open salesperson position that Progar left in approximately December 2021.

68. Ms. Taylor spoke to her supervisor, Albert-Wade, in approximately December 2021 about her desire to apply for and to be hired as a Barrett Firearms salesperson.

69. Albert-Wade said that she would check with Barrett Firearms' head of sales, Miller, about Ms. Taylor's inquiry.

70. After checking with Miller, Albert-Wade confirmed to Ms. Taylor that Barrett Firearms would never hire a woman as a salesperson, telling Ms. Taylor, "That's just who we work for."

71. Ms. Taylor also discussed wanting to work as a Barrett Firearms salesperson directly with Miller, the management employee in charge of hiring Progar's replacement.

9
Case 3:22-cv-00336   Document 1   Filed 05/10/22   Page 9 of 17 PageID #: 9

72. When Ms. Taylor brought up to Miller multiple times in approximately December 2021 and after the topic of Barrett Firearms not hiring women in salesperson roles, Miller would shrug his shoulders.

73. Miller did not deny the existence of Barrett Firearms' no-women-as-salespeople policy or that the Ronnie G. Barrett is directly responsible for that policy.

74. Ms. Taylor complained to Barrett Firearms' management about the company's failure to consider her for a salesperson position and failure to hire her for the same role.

75. But for Ms. Taylor's understanding of Barrett Firearms' no-women-as-salespeople policy, Ms. Taylor would have formally applied for a salesperson role at Barrett Firearms.

76. Because of Barrett's illegal, no-women-as-salespeople policy, Barrett Firearms would not have hired Ms. Taylor because of her gender if she had applied for the job.

77. No bona fide occupational qualification exists which prevents Barrett Firearms from hiring women as salespeople.

78. Barrett Firearms failed to recruit Ms. Taylor as a salesperson because of her gender.

79. Barrett Firearms failed to consider Ms. Taylor as an applicant for a salesperson role because of her gender.

80. The knowledge that Barrett Firearms would not hire women as salespeople based on its blanket policy deterred Ms. Taylor from completing a formal application for a salesperson role because of her gender.

81. Barrett Firearms similarly deterred at least one other current Barrett Firearms employee from applying for a salesperson role because of her gender.

82. The knowledge that Barrett Firearms would not hire any women as salespeople based on its blanket policy deterred other women from applying for salesperson roles because of their gender.

## CLASS ACTION ALLEGATIONS

83. Ms. Taylor seeks class certification on Count I under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class: **Women whose applications to work for Barrett Firearms as salespeople were rejected at any time since May 9, 2021, and women who were deterred from applying to work as salespeople for Barrett Firearms since May 9, 2021, by its well-known policy of refusing to hire women as salespeople** ("Putative Class").

84. The Putative Class has numerous members.

85. The Putative Class is so numerous that joinder of all members is not practical.

86. There are questions of law or fact common to the Putative Class, including (1) whether Barrett Firearms discriminated against them based on their gender; (2) whether Barrett Firearms is liable for the gender discrimination; and (3) the proper measure of damages for actionable gender discrimination.

87. Ms. Taylor's gender-discrimination claims against Barrett Firearms are typical of those of the Putative Class; they arise out of the same unlawful policy.

88. Barrett Firearms' defenses to Ms. Taylor's gender-discrimination claims are typical of its defenses to those of the Putative Class; they arise out of the same unlawful policy.

89. Ms. Taylor can fairly and adequately protect the interests of the Putative Class; she is asserting the same claims as the Putative Class.

90. Ms. Taylor can fairly and adequately protect the interests of the Putative Applicant

11
Case 3:22-cv-00336   Document 1   Filed 05/10/22   Page 11 of 17 PageID #: 11

Class; she has no interests adverse to the Putative Class.

91. Ms. Taylor can fairly and adequately protect the interests of the Putative Class; she has retained counsel experienced in class-action employment litigation.

92. The common questions of law and fact predominate over the variations which may exist between members of the Putative Class, if any.

93. Ms. Taylor, the members of the Putative Class, and Barrett Firearms all have a commonality of interest in the subject matter and remedy sought, namely compensatory damages, punitive damages, back pay, front pay, interest, costs, and attorneys' fees.

94. If each Putative Class member injured or affected had to file her own lawsuit, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals, to this Court, and to Barrett Firearms.

95. A class action accordingly is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Putative Class is entitled.

96. Injunctive relief is appropriate to remedy Barrett Firearms' unlawful discrimination.

## COUNT I
### Class Gender Discrimination for Putative Class
### Tenn. Code Ann. § 4-21-311(a), -401(a)(1)

97. Ms. Taylor incorporates by reference all prior allegations in this Complaint.

98. Ms. Taylor and the Putative Class members are women; at all relevant times, they were and are members of a protected class.

99. Ms. Taylor and the Putative Class members were qualified to work for Barrett Firearms as salespeople.

100. Barrett Firearms failed to hire, or consider for hire, Ms. Taylor and the Putative Class members because of their gender.

101. Barrett Firearms deterred women like Ms. Taylor and the Putative Class members from applying for work as salespeople because of their gender.

102. Barrett Firearms failed to recruit women applicants for salesperson roles because of their gender.

103. Ms. Taylor and the Putative Class members would have applied to work as salespeople for Barrett Firearms if not for Barrett Firearms' unlawful policy.

104. Women interested in a salesperson role would have applied had Barrett Firearms recruited qualified women applicants for its sales positions.

105. Had Ms. Taylor and the Putative Class members applied to work for Barrett as salespeople, Barrett Firearms would have rejected them because of their policy of refusing to hire women as salespeople.

106. There is a causal connection between Ms. Taylor's and the Putative Class members' gender and Barrett Firearms' failure to hire them or to consider them for hire.

107. Barrett Firearms' gender discrimination caused Ms. Taylor and the Putative Class members damages, including but not limited to compensatory damages, back pay, front pay, interest, costs, and attorneys' fees.

108. Barrett Firearms' gender discrimination warrants the implication of punitive damages; no bona fide occupational qualification justifies Barrett Firearms' failure to hire Ms. Taylor and the Putative Class members because of their gender.

109. Barrett's Firearms' gender discrimination warrants the imposition of injunctive relief to correct its discriminatory practices.

## COUNT II
### Retaliation against Ms. Taylor
### EPA, Title VII, and the THRA

110. Ms. Taylor incorporates by reference all the prior allegations in this Complaint.

111. Ms. Taylor is a member of a protected class under the EPA, namely a woman.

112. Ms. Taylor is a member of a protected class under Title VII, namely a woman.

113. Ms. Taylor is a member of a protected class under the THRA, namely a woman.

114. Ms. Taylor engaged in activities protected by the EPA, including but not limited to the Protected Activities described in paragraph 2.

115. Ms. Taylor engaged in activities protected by Title VII, including but not limited to the Protected Activities described in paragraph 2.

116. Ms. Taylor engaged in activities protected by the THRA, including but not limited to the Protected Activities described in paragraph 2.

117. At all relevant times, Barrett Firearms was aware of Ms. Taylor's activities protected by the EPA.

118. At all relevant times, Barrett Firearms was aware of Ms. Taylor's activities protected by Title VII.

119. At all relevant times, Barrett Firearms was aware of Ms. Taylor's activities protected by the THRA.

120. After learning of Ms. Taylor's activities protected by the EPA, Barrett Firearms took actions against Ms. Taylor that would dissuade a reasonable employee from complaining about gender and pregnancy discrimination and unequal pay, including but not limited to ostracizing Ms. Taylor, reassigning Ms. Taylor's job duties to other Barrett Firearms employees,

terminating Ms. Taylor's employment; and by belatedly and falsely accusing Ms. Taylor of theft during an unemployment appeal hearing in April 2022.

121. After learning of Ms. Taylor's activities protected by Title VII, Barrett Firearms took actions against Ms. Taylor that would dissuade a reasonable employee from complaining about gender and pregnancy discrimination and unequal pay, including but not limited to ostracizing Ms. Taylor, reassigning Ms. Taylor's job duties to other Barrett Firearms employees, and ultimately terminating Ms. Taylor's employment.

122. After learning of Ms. Taylor's activities protected by the THRA, Barrett Firearms took actions against Ms. Taylor that would dissuade a reasonable employee from complaining about gender and pregnancy discrimination and unequal pay, including but not limited to ostracizing Ms. Taylor, reassigning Ms. Taylor's job duties to other Barrett Firearms employees, and ultimately terminating Ms. Taylor's employment.

123. The actions Barrett Firearms took against Ms. Taylor were because of her activities protected by the EPA.

124. The actions Barrett Firearms took against Ms. Taylor were because of her activities protected by Title VII.

125. The actions Barrett Firearms took against Ms. Taylor were because of her activities protected by the THRA.

126. The actions Barrett Firearms took against Ms. Taylor caused her damages, including but not limited to back pay, front pay, compensatory damages, attorneys' fees, costs, and interest.

## JURY DEMAND

127. Ms. Taylor demands a jury trial.

# PRAYER FOR RELIEF

Ms. Taylor prays for the following relief from this Court:

A. Permit Ms. Taylor and the Putative Class members to proceed with this litigation as a class action;

B. Appoint Ms. Taylor's attorneys as the attorneys for the Putative Class;

C. Award damages to Ms. Taylor for the gender discrimination she suffered at the hands of Barrett Firearms;

D. Award damages to the Putative Class members for the gender discrimination they suffered at the hands of Barrett Firearms or by being deterred from applying to work for Barrett Firearms;

E. Award appropriate injunctive relief to the Putative Class to ensure that Barrett Firearms ceases its discriminatory hiring and recruiting practices;

F. Award Ms. Taylor damages for retaliation, including but not limited to back pay, front pay, and compensatory damages;

G. Order Barrett Firearms to pay all costs and expenses of this action;

H. Order Barrett Firearms to pay all the attorneys' fees incurred by Ms. Taylor, the Putative Applicant Class, and the Putative Deterred Class;

I. Order Barrett Firearms to pay pre-judgment and post-judgment interest; and

J. Award any other relief the Court deems appropriate.

Date: May 10, 2022                                  Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TN #018965)
/s/ *Melody Fowler-Green*
Melody Fowler-Green (TN #023266)
/s/ *N. Chase Teeples*
N. Chase Teeples (TN #032400)
YEZBAK LAW OFFICES PLLC
2021 Richard Jones Road, Suite 310A
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
mel@yezbaklaw.com
teeples@yezbaklaw.com

*Counsel for Plaintiff*